UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RYAN M. WILLIAMS and<br>SAMUEL R. MURPHY<br>individually and on behalf of<br>all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WIX.COM, INC.,<br><u>Serve at:</u><br>    The Corporation Trust Company<br>    Corporation Trust Center<br>    1209 Orange Street<br>    Wilmington, Delaware 19801<br><br>*Defendant*. | Case No.: 4:17-cv-00434<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Ryan M. Williams and Samuel R. Murphy, individually and on behalf of all others similarly situated, bring this action against Defendant WIX.COM, INC. ("WIX") to secure redress for WIX's practice of:

(1)      sending text messages to cellular telephone numbers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*., and

(2)      sending telemarketing text messages to individuals who are registered on the national do-not-call ("DNC") registry, in violation of the TCPA, 47 U.S.C. §§ 227, *et seq*., and

Plaintiffs, for their class action complaint, allege as follows based upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by counsel:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Williams and Murphy are residents of Jackson County, Missouri.

2. Defendant WIX is a Delaware corporation with a principal place of business outside of Missouri.

3. Defendant WIX conducts business throughout the United States and maintains a registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4. Defendant WIX markets and sells various web-design and web-hosting related products and services to consumers and businesses throughout the United States.

5. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to the TCPA claims. *See Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

6. The Court has personal jurisdiction over WIX and venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(b) & (c) because Plaintiffs reside in and were sent unlawful text messages in this district, and because WIX's contacts within this district are sufficient to subject it to personal jurisdiction.

7. On information and belief, WIX has sent the same or similar text messages complained of by Plaintiffs to others within this judicial district, such that a substantial portion of the events giving rise to this cause of action occurred here.

8. In addition, WIX also transacts significant amounts of business within this district, directs telephone calls and text messages here, solicits customers here, and enters into consumer and business contracts here, thereby subjecting it to the jurisdiction of this Court.

## NATURE OF THE ACTION

9. In order to drive consumer traffic to its website www.wix.com, which encourages consumers to sign up for a WIX account and to use and purchase various web-design and web-hosting related products and services, WIX repeatedly sends unsolicited text messages to Plaintiffs and putative class members' cellular telephones in violation of the TCPA.

10. Specifically, WIX captures the cellular telephone number of any person or entity who, for any reason, calls 1-800-600-0949 (WIX's general business phone number) and then WIX automatically (without any human intervention) sends an unsolicited text message to the captured cellular telephone number with a link to its website.

11. By sending the text messages at issue in this Complaint, WIX has caused Plaintiffs and the putative class members (as defined herein) actual harm.

12. WIX routinely sends these text messages despite the fact that Plaintiffs and the putative class:

> (a) never provided prior express consent in writing, or otherwise, for WIX to send text messages to the specific cellular telephone numbers at issue; and/or
>
> (b) never provided prior express consent in writing, or otherwise, for WIX to send text messages to any cellular telephone number using an automatic telephone dialing system (as defined by the TCPA).

13. WIX also sent such text messages to Plaintiff Williams and other putative class members even though they have registered their telephone numbers on the national DNC registry.

14. In response to WIX's unlawful conduct, Plaintiffs bring the instant lawsuit

3

Case 4:17-cv-00434-DW    Document 1    Filed 05/26/17    Page 3 of 19

seeking an injunction requiring WIX to cease all unsolicited text message activities and an award of statutory damages to Plaintiffs and members of the putative class under the TCPA.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## 47 U.S.C. §§ 227, *et seq.*

15. Advancements in telephone dialing technology since the 1980s and 90s have made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.

16. Senator Hollings, sponsor of the TCPA, described robocalls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1990).

17. The Federal Trade Commission ("FTC") reported that "robocall complaints had peaked at more than 200,000 per month" by the fourth quarter of 2012. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Declaratory Ruling and Order, CG Dkt. No. 02-278, ¶ 5 (July 10, 2015) ("2015 TCPA Order") (citations omitted). The Federal Communications Commission ("FCC") received more than 215,000 TCPA complaints in 2014. *Id*. Statement of FCC Chairman Tom Wheeler, p. 106.

18. In response to these unwanted telephone calls, text messages, and junk faxes, the federal government and numerous states have enacted legislation to combat these widespread telemarketing abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.... Banning such automated or prerecorded telephone calls to the home, except when

4

>   the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243 § 2(6, 12) (1991), *codified at* 47 U.S.C. § 227.

19. As is relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

20. For purposes of the TCPA, "[a] text message to a cellular telephone … qualif[ies] as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) (citation omitted).[1]

21. "Automatic telephone dialing system" ("ATDS") refers to any equipment that has the "capacity to dial numbers without human intervention[,]" such as predictive dialers. *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (*citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14092, ¶ 132 (2003) ("2003 TCPA Order")).

22. In 2012, the FCC – the agency tasked with promulgating the implementing regulations of the TCPA – revised its TCPA rules to require *prior express written consent* before initiating a telephone call "that includes or introduces an advertisement or constitutes telemarketing[.]"47 C.F.R. § 64.1200(a)(2); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013).

---

[1] *See also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, GC Dkt. No. 02-278, ¶ 3 (Nov. 15, 2016) (the TCPA's prohibition on robocalls "encompasses both voice and text calls, including short message service (SMS) calls and text calls …").

23. According to FCC regulations, "*prior express consent*" must (i) be in writing; (ii) be signed by the person providing the consent; (iii) specify the telephone number to which the person is consenting to be called; and (iv) clearly authorize the calling party to use an ATDS or artificial or pre-recorded voice. *See In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order, CG Dkt. No. 02-278, ¶ 33 (Feb. 15, 2012) ("2012 TCPA Order").

24. In 2003, the FCC adopted a national DNC registry to provide consumers with an option to prohibit unwanted telemarketing solicitations. *2003 TCPA Order* at ¶ 28.

25. The FCC rules also prohibit any person or entity from initiating a telemarketing solicitation to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). For purposes of this provision of the TCPA, wireless subscribers who are registered with the national DNC are presumed to be "residential subscribers." *2003 TCPA Order* at ¶ 36.

26. The FCC's regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Whether a call is an "advertisement" depends on the content of the material. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

27. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The "telemarketing" inquiry focuses on the purpose of the telephone call or message, rather than its content. *Golan*, 788 F.3d at 820.

6

Case 4:17-cv-00434-DW   Document 1   Filed 05/26/17   Page 6 of 19

28. The FCC has also made rulings regarding the TCPA's vicarious liability standards as they relate to telemarketing. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995).

29. The FCC has also clarified that vicarious liability is imposed under federal common law principles of agency for violations of either sections 227(b) or (c) that are committed by third-party telemarketers. *Dish Network Ruling* at ¶ 18.

30. The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which may be trebled where defendant's conduct was done willfully or knowingly. 47 U.S.C. §§ 227(b)(3) and (c)(5).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

31. Within the four years preceding the filing of this action, WIX and/or its agents utilized an ATDS to send text messages to the wireless telephone numbers of Plaintiffs and the putative class members.

32. Specifically, the hardware and software used by WIX and/or its agents have the capacity to generate and store random numbers, or store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention.

33. On information and belief, the equipment employed by WIX not only has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with an automated message.

34. WIX's text messages are sent with equipment capable of dialing numbers without human intervention.

35. WIX's messages are unattended by human beings, and are sent automatically to the telephone numbers it captures from incoming calls to its general business phone number, 1-800-600-0949.

36. WIX does not provide any prior notice or notification that anyone who calls 1-800-600-0949 from a cellular telephone number will be sent an automated text message.

37. When someone calls 1-800-600-0949, WIX automatically sends, or causes to be sent, an automated short messaging service message, commonly referred to as a text message, to the captured cellular telephone number.

38. The text messages sent by WIX include WIX's logo and a link to www.wix.com, which contains additional links encouraging consumers to sign up for an account and to use and purchase various web-design and web-hosting relating products and services.

39. Plaintiffs and the putative class never provided prior express consent in writing, or otherwise, for WIX to send autodialed text messages.

40. Not only does WIX fail to obtain express consent before sending text messages, WIX's text messages and the prerecorded voice message WIX plays during these calls, do not provide callers with a way of opting out of future text messages.

41. WIX sent these text messages to Plaintiff Williams and other putative class members who have their telephone numbers registered with the national DNC registry.

42. On information and belief, WIX sent many of these individuals more than one text message, and WIX lacks an adequate system for preventing the transmission of numerous automated text messages to the same telephone number.

43. WIX is aware that the above-described text messages are being sent to consumers without their prior express consent, but WIX continues to send them anyways.

44.     Plaintiffs and the putative class have been substantially damaged by WIX's calls[2] – their privacy was improperly invaded; the text messages intruded upon their seclusion; they were annoyed and inconvenienced; the repeated text messages interfered with the exclusive use of their property; they were charged out of pocket cellular airtime minutes for these text messages; they were charged cellular data for services related to the text messages and website links, *see Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (stating that unwanted cell phone robocall recipients are damaged because they are charged "out of pocket" cellular airtime minutes);[3] the ATDS calls intruded upon the use and occupied the capacity of Plaintiffs' and the Class members' cellular phones, depleted and/or reduced the lifespan of their cellular phone batteries,[4] and caused Plaintiffs and the Class members to incur the additional

---

[2]     *See Van Patten v. Vertical Fitness Group, LLC*, No. 14-55980 (9th Cir. Jan. 30, 2017) (allegations of "[u]nsolicited phone calls or text messages … invade the privacy and disturb the solitude of their recipients" and are sufficient to confer Article III standing); *Williams v. zZounds Music, L.L.C.*, No. 16-cv-940 (W.D. Mo. Feb. 28, 2017) (complaints of autodialed calls to Plaintiff's cell phone sufficiently allege a "concrete injury" that is "fairly traceable to the challenged conduct of the defendant") (*citing Van Patten*); *Hunsinger v. Gordmans, Inc.*, No. 16-cv-162 (E.D. Mo. Dec. 5, 2016) (complaints of text messages to Plaintiff's cell phone sufficiently alleged an "injury in fact" that was fairly traceable to the defendant's conduct); *Ung v. Univ. Acceptance Corp.*, No. 15-cv-127 (D. Mn. Aug. 3, 2016) ("the receipt of unwanted phone calls constitutes a concrete injury sufficient to create standing under the TCPA"); *Caudill v. Wells Fargo Home Mtg., Inc.*, 16-cv-66, 2016 WL 3820195, 15 *2 (E.D. Ky. July 11, 2016) (phone calls cause harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States"); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 649 (N.D. W. Va. 2016) (collecting cases).

[3]     *See also In re Rules Implementing the Tel. Consumer Prot. Act of* 1991, 23 FCC Red. 559, 562 (F.C.C. 2007) ("wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."); *Warnick v. Dish Network LLC*, No. 12-cv-01952 (D. CO Sep. 30, 2014) ("users of cellular telephone numbers *are indeed charged* for incoming calls, regardless of whether they incur any *additional* charges for such calls."); *Markovic v. Appriss, Inc.*, No. 13-cv-1439 (S.D. IN Dec. 31, 2013) (*quoting Soppet*, 679 F.3d 638-39 (7th Cir. 2012)) ("[A]n automated call to a cell phone adds expense to annoyance … [The recipient] is out of pocket the cost of airtime minutes and has had to listen to a lot of useless voicemail."); *Lee v. Credit Mgmt., LP*, 846 F.Supp.2d 716, 729 (S.D. TX 2012) (Plaintiff's statement that he pays a third-party provider for cellular phone services is sufficient to show that an individual was charged for the calls.); *Fini v. Dish Network L.L.C.*, 955 F.Supp.2d 1288, 1297 (M.D. FL 2013) (same); *Diugosh v. Directbuy, Inc. of San Antonio*, No. 13-cv-722 (W.D. TX Oct. 24, 2013) (same).

[4]     *See e.g.*, Apple Inc., *Battery Servicing and Recycling*, http://www.apple.com/batteries/service-and-recycling/ ("All rechargeable batteries have a limited lifespan … Your own battery's lifespan will vary depending on how you use your device …").

costs of electricity to recharge their phones;[5] and, on information and belief, WIX's repeated text messages have caused unwanted use, damage and/or depletion of their property, including, but not limited to, a reduction in the lifespan of their speakers, vibration motors, LCD screens, and other hardware and/or electronic components.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFFS WILLIAMS AND MURPHY

45. At all times relevant hereto, Plaintiff Williams has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, ending in "6636".

46. At all times relevant hereto, Plaintiff Murphy has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, ending in "0305".

47. On multiple occasions in 2017, using their cellular telephones, Plaintiffs called WIX's general business phone number, 1-800-600-0949, to speak with a WIX representative but were unable to reach anyone.

48. Instead, on some occasions when Plaintiffs called WIX's general business phone number, 1-800-600-0949, WIX answered with a prerecorded message stating that WIX was unavailable and to call back at another time.

49. On other occasions when Plaintiffs called WIX's general business phone number, 1-800-600-0949, WIX answered with a prerecorded message stating that a text message has been sent to Plaintiffs' cellular telephones with a link to www.wix.com where information can be found regarding the features and availability of WIX's products and services. Simultaneously,

---

[5] *See Mey v. Got Warranty, supra fn. 2*, 193 F. Supp. 3d at 645-47 (Intangible harms include "intrusion upon and occupation of the plaintiff's cell phone. … [and] intrusion upon another person's computerized electronic equipment … " Tangible harms, including the cost of electricity, "[w]hile certainly small, [are] real, and the cumulative effect could be consequential.").

WIX captured Plaintiffs' cellular telephone numbers using caller identification or other similar technology and WIX automatically (without human intervention) sent, or caused to be sent, an automated text message from 1-800-600-0949 to Plaintiffs' cellular telephones containing WIX's logo and/or a link to WIX's website.

50. The text messages WIX sent to Plaintiffs were sent while Plaintiffs were still listening to WIX's prerecorded message.

51. Plaintiffs had no prior notice or notification that if they call 1-800-600-0949 from a cellular telephone number they might be sent an automated text message, and WIX did not provide Plaintiffs with any prior notice or notification of the specific days and times that text messages will be sent to those who call 1-800-600-0949 from a cellular telephone number (as opposed to only hearing a prerecorded message telling the consumer to call back later).

52. Plaintiffs have never been WIX users, have never had an account with WIX, and have never provided express consent to WIX in writing, or otherwise, for WIX to send autodialed text messages to their cellular telephone numbers.

53. The text messages sent by WIX to Plaintiffs are advertisements and/or constitute telemarketing as defined by the TCPA.

54. On July 7, 2016, Plaintiff Williams registered his wireless number ending in "6636" with the national DNC registry, and received confirmation that his DNC registration would be effective as of August 7, 2016.

55. Since the effective date of Plaintiff Williams' registration on the national DNC registry in 2016, WIX sent at least two (2) text messages to Plaintiff Williams in 2017.

56. Plaintiffs, both having been sent unsolicited autodialed text messages from WIX, and Plaintiff Williams having been sent more than one text message within the twelve-month

period since the effective date of his registration with the national DNC registry, file this Complaint on behalf of themselves and others similarly situated, seeking relief from WIX's illegal telemarketing practices.

## **CLASS ACTION ALLEGATIONS**

57. Plaintiffs restate and incorporate by reference all paragraphs of this Complaint, including all subparagraphs thereof.

58. As to Count I for violation of the TPCA (the "TCPA Class"), Plaintiffs bring this action on behalf of themselves and on behalf of a putative class defined as:

> All persons and entities within the United States to whom WIX (or a third party on WIX's behalf) sent a text message from 1-800-600-0949 to their cellular or wireless telephone within the four years predating the filing of the Complaint.

59. As to Count II for violation of the TPCA (the "DNC Class"), Plaintiff Williams brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States whose phone numbers were registered on the national do-not-call registry and to whom, within the four years predating the filing of the Complaint, WIX (or a third party on WIX's behalf) sent more than one text message from 1-800-600-0949 within any twelve-month period.

60. Excluded from the above-defined classes are WIX, any entity in which WIX has a controlling interest, WIX's officers, directors, and employees, WIX's counsel, any persons or entities who have previously settled a TCPA claim with WIX, the Court and Court personnel, and Plaintiffs' counsel.

61. **Numerosity – Fed. R. Civ. P. 23(a)(1).** Plaintiffs do not know how many members are in each putative class, but believes them to be in the thousands, or tens of thousands. On information and belief, the number of class members is so numerous that their individual joinder is impracticable. The precise number of putative class members and their

phone numbers can be obtained from information and records in the possession and control of WIX or third parties acting on WIX's behalf.

62. **Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. 23(a)(2); 23(b)(3).** Common questions of law or fact exist as to all members within each putative class and predominate over any questions solely affecting any individual member. The predominating common legal and factual questions, each of which may also be certified under Fed. R. Civ. P. 23(c)(4), include the following:

(a) Whether WIX used an automatic telephone dialing system to send text messages;

(b) Whether WIX's text messages are advertisements;

(c) Whether WIX's text messages constitute telemarketing;

(d) Whether WIX gave prior notice to cellular phone users that, during certain days and times, WIX will automatically send a text message to cellular phone numbers that call its 1-800 number;

(e) Whether WIX's text messages were sent willfully or knowingly;

(f) Whether WIX's text messages were made for an emergency purpose;

(g) Whether WIX honors the national DNC list;

(h) Whether WIX (i) established and implemented written procedures to comply with the national do-not-call rules; (ii) trained its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintained a list of telephone numbers WIX may not contact; (iv) employed a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any

13

> call or text is made, and (v) maintained records documenting this process; and
>
> (i) Whether, and to what extent, class members are entitled to equitable relief, including declaratory relief, a preliminary injunction, and/or permanent injunction.

63. **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of the putative class members they seek to represent. The factual and legal bases of WIX's liability to Plaintiffs are the same for all putative members in each class: (i) WIX violated the TCPA by using an automatic telephone dialing system to send text messages without obtaining prior express written consent in writing or otherwise; and (ii) WIX violated the TCPA by sending multiple text messages during a twelve-month period to persons on the national DNC list.

64. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).** Plaintiffs will fairly and adequately protect the interests of the putative class members. Plaintiffs have no interests that might conflict with the interests of the putative class members. Plaintiffs will pursue the claims vigorously, and Plaintiffs have retained counsel competent and experienced in TCPA class actions and complex litigation.

65. **Superiority – Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against WIX. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if class members could afford such individualized

14

Case 4:17-cv-00434-DW   Document 1   Filed 05/26/17   Page 14 of 19

litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**COUNT I**
**VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(PLAINTIFFS WILLIAMS AND MURPHY V. WIX.COM, INC.)**

66. Plaintiffs restate and incorporate by reference all paragraphs of this Complaint, including all subparagraphs thereof.

67. WIX employed an ATDS to send non-emergency text messages to the cellular or wireless telephones of Plaintiffs and the TCPA Class.

68. WIX did not obtain prior express consent in writing, or otherwise, to send autodialed text messages to the cellular or wireless telephones of Plaintiffs or the TCPA Class.

69. As a result of WIX's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiffs and the TCPA Class were harmed and are entitled to a minimum of $500.00 in damages for each violation.

70. Plaintiffs and the TCPA Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

71. WIX's text messages were willful and knowing, in that WIX knew it was employing equipment that would capture the cellular telephone numbers of anyone who called WIX's 1-800 number and WIX intended that such equipment would in fact immediately send a

text message to such cellular telephone numbers containing WIX's logo and a link to www.wix.com for the purpose of driving consumer traffic to its website containing information regarding the features and availability of WIX's products and services.

72. "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n. 86 (May 14, 2007) (citations omitted).

73. Accordingly, the Court should treble the amount of statutory damages available to Plaintiffs and the TCPA Class and award $1,500 for each violation of the TCPA.

WHEREFORE, Plaintiffs, individually and on behalf the TCPA Class, seek $1,500 per violation of the TCPA; a declaration that WIX's methods, acts and practices violate the TCPA, 47 U.S.C. §§ 227, *et seq*.; an injunction prohibiting WIX from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## COUNT II
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)
### (PLAINTIFF WILLIAMS V. WIX.COM, INC.)

74. Plaintiffs restate and incorporate by reference all paragraphs of this Complaint, including all subparagraphs thereof.

75. WIX's text messages were made for a commercial purpose, in that they advertised the commercial availability of its products and services by encouraging consumers to visit WIX's website, to review information regarding the features of WIX's products and services, to sign up for a WIX account, and ultimately to purchase WIX's products and services.

76. WIX made more than one advertising and/or telemarketing text message call within a twelve-month period to Plaintiff Williams and the DNC Class after their telephone

16

numbers had been registered on the national DNC registry for more than 31 days.

77. These advertising and/or telemarketing text message calls were made even though WIX did not obtain prior express consent in writing, or otherwise, to send such text messages to Plaintiff Williams or the DNC Class.

78. As a result of WIX's conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff Williams and the DNC Class were harmed and are entitled to a minimum of $500.00 in damages for each violation.

79. Plaintiff Williams and the DNC Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

80. On information and belief, WIX failed to (i) establish and implement written procedures to comply with the national do-not-call rules; (ii) train its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintain a list of telephone numbers WIX may not contact; (iv) employ a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and (v) maintain records documenting this process.

81. On information and belief, WIX failed to honor the national DNC registry, failed to maintain an internal DNC list and/or failed to place the phone numbers of Plaintiff Williams and the DNC Class on its internal DNC list upon request, failed to provide "an interactive opt-out mechanism" by which Plaintiff Williams and the DNC Class could opt out of future calls, and failed to maintain an "automated, interactive voice- and/or key press-activated opt-out mechanism" by which Plaintiff Williams and the DNC Class could call a separate toll-free number and add their numbers to WIX's internal DNC list.

82. WIX's text messages were willful and knowing, in that WIX knew it was

employing equipment that would capture the cellular telephone numbers of anyone who called WIX's 1-800 number even if such persons had registered their numbers on the national DNC list, and WIX intended that such equipment would in fact immediately send a text message to such cellular telephone numbers containing WIX's logo and a link to www.wix.com even if such persons had registered their numbers on the national DNC list.

83. "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n. 86 (May 14, 2007) (citations omitted).

84. Accordingly, the Court should treble the amount of statutory damages available to Plaintiff Williams and the DNC Class and award $1,500 for each violation of the TCPA.

WHEREFORE, Plaintiff Williams, individually and on behalf the DNC Class, seeks $1,500 per violation of the TCPA; a declaration that WIX's methods, acts and practices violate the TCPA, 47 U.S.C. §§ 227, *et seq*.; an injunction prohibiting WIX from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## JURY DEMAND

Plaintiffs demands a trial by jury of all claims that are so triable.

Dated: May 26, 2017                           Respectfully submitted,

  /s/ *Ari N. Rodopoulos*
ARI N. RODOPOULOS           MO # 58777
WOOD LAW FIRM, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
Telephone: (816) 256-3582
Facsimile: (816) 337-4243
Email: *ari@woodlaw.com*

*and*

BILL KENNEY LAW FIRM, LLC
WILLIAM C. KENNEY           MO # 63001
1101 Walnut Street, Suite 102
Kansas City, MO 64106
Telephone: (816) 842-2455
Facsimile: (816) 474-8899
Email: *bkenney@billkenneylaw.com*

*Attorneys for Plaintiffs and all others similarly situated*